**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| ANNE R. HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )    NO. 1:13–CV–331 |
| CAROLYN W. COLVIN, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court for review of the Commissioner of Social Security's decision denying Disability Insurance Benefits to Plaintiff Anne R. Hill ("Hill"). For the reasons set forth below, the Commissioner of Social Security's final decision is **AFFIRMED**.

BACKGROUND

On July 1, 2011, Hill filed an application for Social Security Disability Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. section 401 *et seq.* She also applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. section 1381 *et. seq.* Hill alleged that her disability began on June 30, 2011. The Social

Security Administration ("SSA") denied her initial application and also denied her claim upon reconsideration.

Hill requested a hearing, and on September 6, 2012, Hill appeared with her attorney at an administration hearing before Administrative Law Judge ("ALJ") Maryann S. Bright. Testimony was provided by Hill, Kim Stamate, Hill's friend, and vocational expert Robert L. Bond. On September 27, 2012, ALJ Bright issued a decision denying Hill's claims, and finding her not disabled because she could perform a significant number of jobs in the national economy, despite her limitations. (Tr. 7-24.)

Hill requested that the Appeals Council review the ALJ's decision, but that request was denied. Accordingly, the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). Hill has initiated the instant action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. section 405(g).

DISCUSSION

Facts

Hill was born in 1958, and was 52 years old on the alleged disability onset date. (Tr. 18.) She earned her GED in 1992. (Tr. 165.) Hill worked as a press operator between March 1998 and June 2011. (Tr. 165.)

<u>Medical Evidence</u>

In 1985, Hill underwent cervical fusion surgery at C5-C6. (Tr. 230.)  In November 2010, Dr. Greg Chupp diagnosed Hill with a neck strain.  (Tr. 208.)  On November 29, 2010, Dr. Chupp reexamined Hill's neck injury, found she was "doing well," and released her to full work with no restrictions.  (Tr. 206, 208-09.)  Dr. Chupp's notes indicate that Hill "states [she] feels a lot [*sic*] better, ready to go back to work with no restrictions." (Tr. 209.)

On December 11, 2010, Hill was treated for left shoulder pain (Tr. 210).  Hill was able to move "all extremities well, other than the left shoulder," and her neck was characterized as supple with adequate range of motion.  (Tr. 211.)  X-rays of her left shoulder revealed a hyperextension injury and a moderately severe osteoarthritis with prominent osteophytic spurring around the femoral head margins.  (Tr. 218.)  Hill was treated with Toradol, Ultram, and a sling.  (Tr. 214.)

An imaging study taken on December 16, 2010, revealed a variety of issues with Hill's left shoulder, including osteoarthritis, tedinopathy, and acromioclavicular degenerative joint disease.  (Tr. 219-20.)  On December 20, 2010, Hill's orthopedist, Dr. Barry Liechty, M.D., administered a cortisone injection to Hill's left shoulder.  (Tr. 221, 226.)  Hill returned to work on December 21, 2010.  (*See* Tr. 221.)  On

January 7, 2011, Hill accepted a voluntary layoff. (*See* Tr. 221.) Hill told Dr. Liechty that she would not pursue surgery on her left shoulder during the lay off because her health insurance was going away. (*See* Tr. 221.)

On January 17, 2011, Dr. Liechty diagnosed osteoarthritis in the glenohumeral joint and mild tendinopathy in Hill's left shoulder. (Tr. 221.) On January 21, 2011, Hill met with another doctor referred by Dr. Liechty to discuss left shoulder replacement surgery. (Tr. 229.)

On May 25, 2011, Hill visited Dr. Liechty complaining of left hip and groin pain that she had experienced for about a year, knee pain that she had experienced for six months, and difficulty with walking. (Tr. 230.) The records do not indicate any complaint about Hill's right shoulder. (*See* Tr. 230-31.) Dr. Liechty identified severe osteoarthritis in Hill's left hip and left knee medial pain. (Tr. 231.)

On July 5, 2011, Dr. Liechty performed the surgery for Hill's left hip replacement. (Tr. 241-42.) At that time, Hill suffered left hip severe osteoarthritis with a bony defect in the superior acetabulum. (Tr. 241.) The treatment notes reference Hill's left shoulder pain, but do not address her right shoulder. (*See* Tr. 238.)

On August 8, 2011, Hill met with Dr. Liechty for a post-operation follow-up. (Tr. 317.) His treatment notes indicate

-4-

that Hill stated that she was not using any assistive device, and was taking two Vicodin per week. (Tr. 317.) Dr. Liechty stated that her replacement hip was in good alignment with progressing healing. (Tr. 317.) He also noted Hill's shoulder arthritis, but did not mention her neck or spine. (*See* Tr. 317.) He released Hill to work that involved no squatting, no lifting over ten pounds, and no pushing or pulling. (Tr. 320.) On August 29, 2011, Dr. Liechty released Hill to work that avoided heavy lifting, squatting, pushing, and pulling indefinitely. (Tr. 316.)

On August 20, 2011, consultative examiner Dr. David Ringel, D.O., examined Hill. (Tr. 275-78.) Dr. Ringel noted that Hill reported that she had last worked in June 2011, could dress and feed herself without difficulty, could stand one to two hours at a time and four hours out of an eight-hour work day, could walk two blocks on level ground, could sit for two hours without difficulty, could lift ten pounds, could drive for up to an hour, could do most household chores (sweeping, mopping, vacuuming, cooking, washing dishes and climbing stairs) in short intervals with breaks. (Tr. 275.) He characterized Hill as mildly obese, able to ambulate with a limp, and slow getting on and off the examination table due to her left hip, which had been replaced just over one month earlier. (Tr. 276.) He noted that she has "a little bit of stiffness in her neck," and complained of left

knee pain.    (Tr.  275.)    Dr.  Ringel  further  noted  that  Hill
required  no  assistive  devices  to  walk,  had  5/5  grip  strength
bilaterally,    and    good    thumb-finger    opposition    with    no
abnormalities,  had  5/5  motor  strength  in  all  proximal  muscle
groups  in  all  four  extremities,  and  had  intact  sensation  in  all
four  extremities.    (Tr.  277.)    He  identified  range  of  motion
deficits  in  Hill's  cervical  spine,  lumbar  spine,  hips,  and  both
shoulders  (her  left  shoulder  being  "somewhat  worse"  than  her
right).  (Tr.  277-278.)

On  September  18,  2011,  state  agency  physician  Dr.  J.  Sands,
M.D.,  reviewed  Hill's  records  and  prepared  a  Physical  Residual
Functional  Capacity  Assessment.    (Tr.  281-88.)    Dr.  Sands  opined
that  Hill  could  lift  twenty  pounds  occasionally  and  ten  pounds
frequently;  sit  up  to  six  hours  in  an  eight-hour  workday  with
normal  breaks;  stand  and/or  walk  up  to  six  hours  in  an  eight-hour
workday  with  normal  breaks;  and  reach  only  occasionally  with  her
left  arm  due  to  her  history  of  severe  left-arm  osteoarthritis.
(Tr.  282-84.)    In  making  this  RFC  assessment,  Dr.  Sands  noted
"rom  [range  of  motion]  loss  to  lumbar  spine  as  well  as
bilaterally  shoulders."  (Tr.  282.)

On  October  4,  2011,  imaging  of  Hill's  lumbar  spine  indicated
that  vertebral  body  heights  appeared  to  be  preserved,  with  no
acute  bony  pathology,  minimal  degenerative  disc  disease  at  the
L3-4  and  L5-S1  disc  spaces  with  no  subluxation  of  vertebral

bodies, and minimal atherosclerotic vascular changes in associated soft-tissue. (Tr. 303.)

Dr. Sands reviewed additional evidence on October 2, 2011, but did not change his assessment of Hill's RFC. (Tr. 304.) On November 1, 2011, state agency physician Dr. M. Ruiz, M.D., also reviewed Hill's records and affirmed Dr. Sand's opinion. (Tr. 306.)

On November 10, 2011, Hill's primary care physician, Dr. Teresa Smith, M.D., diagnosed Hill with depression and treated her with Zoloft. (Tr. 335-36.) Dr. Smith's notes from that day indicate that Hill complained of pain in her left shoulder and that her gait was not abnormal, but do not reference any difficulty in sitting, standing or walking. (Tr. 335.) Dr. Smith's subsequent notes indicate that the Zoloft was helping Hill. (Tr. 332.) None of notes prepared by Dr. Smith reference any complaints about Hill's right shoulder or neck. (*See* Tr. 332-38.)

### Hill's Hearing Testimony

At the hearing before ALJ Bright on September 6, 2012, Hill testified that she had stopped working on June 30, 2011, because of problems with her hips and shoulders. (Tr. 29, 37.) Hill testified that she drives a couple of times a week (Tr. 31), does a little babysitting (Tr. 45), goes to church (Tr. 54), visits her mother (Tr. 54-55), and does some housework, including

-7-

cooking, dishes, laundry, and vacuuming (Tr. 55-56). Hill testified that she can lift 10-15 pounds with her right arm. (Tr. 51.)

Hill testified that since her hip replacement surgery, she experienced more pain in her left femur than her hip. (Tr. 39.) She further testified that she has had back pain for a long time, including the period when she was working. (Tr. 40.) Using a ten-point scale, Hill characterized her hip pain as a three, her left shoulder pain as an eight, and her left femur pain as a five. (Tr. 60-61.) She takes over-the-counter medication to manage her pain. (*See* Tr. 59-60 (referring to aspirin, ibuprofen and Advil).)

### Ms. Stamate's Hearing Testimony

Ms. Stamate testified that she has known Hill for 18 years, and sees Hill at least once a week. (Tr. 62, 63.) She testified that she helps Hill with housework and walking her dogs. (Tr. 62.) Ms. Stamate also testified that she believes Hill is in pain, and has not seen Hill walk without a limp in over a year. (Tr. 62.)

### Vocational Expert's Hearing Testimony

Vocational expert Robert L. Bond ("VE") testified that he had assessed Hill's past work experience, and classified it as medium to heavy exertional level. (Tr. 64.) The ALJ posited whether a hypothetical individual with Hill's prior work

experience could perform Hill's past jobs, where this individual can lift up to twenty pounds occasionally, lift or carry up to ten pounds frequently, stand or walk for approximately six hours per eight-hour workday, and sit for approximately six hours per eight-hour workday with normal breaks; is limited to occasional pushing or pulling with the left lower extremity and the left upper extremity and occasional reaching in all directions, including overhead on the left; and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. (Tr. 65.) The VE responded that such a hypothetical individual could not perform Hill's past jobs. (Tr. 65.) The ALJ then queried whether this hypothetical individual could perform any work, and if so, asked the VE to provide examples. (Tr. 65.) The VE responded that such an individual could work light and unskilled jobs such as dealer account investigator (DOT # 241.367-038), furniture rental consultant (DOT # 295.357-018), and counter clerk (DOT # 249.366-010). (Tr. 65.) The VE testified that this hypothetical individual could still perform these jobs if the individual was to avoid all crouching, pushing and pulling with the left lower extremity and the left upper extremity, and reaching with the left upper extremity. (Tr. 66.)

The ALJ posited whether these jobs could be performed by a hypothetical individual with Hill's prior work experience who can

lift and carry up to ten pounds occasionally, stand or walk for approximately two hours per eight-hour workday, and sit for approximately six hours per eight-hour workday with normal breaks; is limited to occasional pushing or pulling with the left lower extremity and the left upper extremity and occasional reaching in all directions, including overhead and on the left; and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. (Tr. 66.) The VE responded that such a hypothetical individual could not perform Hill's past jobs or the jobs as dealer account investigator, furniture rental consultant or counter clerk. (Tr. 66.) The VE testified that such a hypothetical individual would be limited to sedentary work, and listed representative jobs of call-out operator (DOT # 237.367-014), semiconductor bonder (DOT # 726.685-066), and registration clerk (DOT # 205.367-030). (Tr. 67.)

Review of Commissioner's Decision

This Court has authority to review the Commissioner's decision to deny social security benefits. 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." *Id*. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support

a decision." *Richardson v. Perales*, 402 U.S. 389, 401 (1971);
*see Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (noting
this is a "deferential standard of review . . . weighted in favor
of upholding the ALJ's decision").    In determining whether
substantial evidence exists, the Court shall examine the record
in its entirety, but shall not substitute its own opinion for the
ALJ's by reconsidering the facts or reweighing the evidence. *See*
*Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003).    With that
in mind, however, this Court reviews the ALJ's findings of law *de*
*novo*, and if the ALJ makes an error of law, the Court may reverse
without regard to the volume of evidence in support of the
factual findings. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir.
1999).

As a threshold matter, for a claimant to be eligible for DIB
or SSI benefits under the Social Security Act, the claimant must
establish that she is disabled.    42 U.S.C. §§ 423(d)(1)(A) and
1382(a)(1).    To qualify as being disabled, the claimant must be
unable "to engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment which
can be expected to result in death or which as lasted or can be
expected to last for a continuous period of not less than 12
months."    42 U.S.C. § 423(d)(1)(A).    To determine whether a
claimant has satisfied this statutory definition, the ALJ
performs a five-step evaluation:

Step 1: Is the claimant performing substantially gainful activity: If yes, the claim is disallowed; if no, the inquiry proceeds to Step 2.

Step 2: Is the claimant's impairment or combination of impairments "severe" and expected to last at least twelve months? If not, the claim is disallowed; if yes, the inquiry proceeds to Step 3.

Step 3: Does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments, as described in 20 C.F.R. § 404, Subpt. P, App. 1? If yes, then claimant is automatically disabled; if not, then the inquiry proceeds to Step 4.

Step 4: Is the claimant able to perform his past relevant work? If yes, the claim is denied; if no, the inquiry proceeds to Step 5, where the burden of proof shifts to the Commissioner.

Step 5: Is the claimant able to perform any other work within his residual functional capacity in the national economy: if yes, the claim is denied; if no, the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)–(v) and 416.920 (a)(4)(i)–(v); *see also Herron v. Shalala*, 19 F.3d 329, 333 n.8 (7th Cir. 1994).

In this case, the ALJ found that Hill suffers from the following severe impairments: degenerative joint disease with total replacement of left hip and osteoarthritis of the left shoulder. (Tr. 12.) The ALJ specifically found that Hill's reported degenerative disc disease of the spine and mental impairments of depression and alcohol did not qualify as severe impairments. (Tr. 13-15.)

The ALJ further found that Hill did not have an impairment of combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 15.) The ALJ considered the opinions of Hill's orthopedist Dr. Liechty, the consultative examiner, and the reviewing state agency physicians, who opined that Hill could perform a limited range of light exertion because of the problems with her left hip and shoulder. (Tr. 18.) The ALJ made the following Residual Functional Capacity ("RFC") determination:

> [Hill] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she can lift up to 20 pounds occasionally, lift and carry up to 10 pounds frequently, stand or walk for approximately 6 hours per 8 hour day, and sit for approximately 6 hours per 8 hour workday, with normal breaks. She can occasionally climb ramps and stairs, balance, stoop, kneel and crawl, but never climb ladders, ropes or scaffolds, crouch, push or pull with the left upper and lower extremities, or reach in all directions (including overhead) with the left upper extremity.

(Tr. 15.) Based upon Hill's RFC, the ALJ found that Hill is unable to perform her past relevant work as a press operator, which was heavy work. (Tr. 18.) However, the ALJ found that Hill is capable of performing certain light work jobs "that exist in significant numbers in the national economy," including work

as a dealer account investigator, a furniture rental consultant, and a counter clerk. (Tr. 19.)

Hill believes that the ALJ committed several errors requiring reversal. First, Hill argues that the ALJ failed to incorporate limitations related to her spine and right shoulder into the RFC and failed to consider the combined impact of all of her impairments. (DE# 16 at 15-18.) Second, Hill alleges the ALJ rendered an improper credibility determination. (*Id.* at 18-19.) Finally, Hill asserts that the ALJ failed to consider Hill's work history in determining her credibility. (*Id.* at 19-20.)[1]

The ALJ's RFC Determination

Hill argues that the ALJ erred in her RCF determination by failing to incorporate the limitations relating to her lumbar spine, cervical spine and right shoulder, and failing to consider the combined impact of all Hill's impairments.

In determining whether a plaintiff is disabled, an ALJ is required to "consider all [the plaintiff's] symptoms, including pain, and the extent to which [the plaintiff's] symptoms can reasonably be accepted as consistent with the objective medical evidence." 20 C.F.R. § 404.1529(a); 20 C.F.R. § 416.929(a). Moreover, in making an RFC determination, an ALJ "must consider

---
[1] Because Hill does not challenge the ALJ's determination regarding any alleged mental impairment, the Court will not address the ALJ's evaluation of Hill's mental impairment claim.

-14-

all allegations of physical and mental limitations or restrictions . . . and . . . limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p; *see also* 20 C.F.R. § 404.1523 ("[W]e will consider the combined effect of all of [the plaintiff's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."). Ultimately, the ALJ must support an RFC determination by "citing specific medical facts . . . and nonmedical evidence." SSR 96-8p.

Hill first argues that the ALJ erred because her findings relating to limitations in sitting, standing, and walking are contradictory. More specifically, Hill claims that the RFC's limitations on sitting, standing and walking to six hours per eight-hour day (Tr. 15) conflicts with the ALJ's statement that there are "no limits on sitting, walking, or standing" in Hill's RFC. (Tr. 17.)

When reviewing an ALJ's decision, "it is proper to read the ALJ's decision as a whole." *Rice v. Barnhart,* 384 F.3d 363, 370 n.5 (7th Cir. 2004). Reading the ALJ's "no limits" statement in context reveals that she was addressing just one of Hill's claimed impairments:

> As for the allegations of low back pain, there are only minimal degenerative changes in the lumbar spine on the imaging study done on October 4, 2011

> (Ex. 11F). Without any nerve root compression, loss of disc space height, or spinal stenosis, *the extent of low back pain and inability to sit, stand, and walk alleged by the claimant is not credible, particularly in light of the absence of complaints of low back pain to treating physicians. Consequently, there are no limits on sitting, walking, or standing in the claimant's residual functional capacity.* . . .

(Tr. 17 (emphasis added)). The ALJ determined that the record did not substantiate Hill's claim that her low back pain affected her ability to sit, stand, and walk, and thus, found this particular claim to be not credible. For that reason, the ALJ found that Hill's alleged low back pain did not call for limitations on sitting, standing, or walking. However, elsewhere in the decision, the ALJ found that Hill's left hip and left shoulder impairments did call for limitations on her ability to sit, stand, and walk. (*See* Tr. 15, 17, 18.) Reading the ALJ's decision as a whole, these findings are not contradictory.

Second, Hill argues that the ALJ improperly "played doctor" by substituting her own medical judgments for that of the physicians. An ALJ impermissibly plays doctor when he reaches his own independent medical conclusions that are unsupported by the record. *See Myles v. Astrue*, 582 F.3d 672, 677–78 (7th Cir. 2009). Here, Hill asserts that the ALJ used her own opinion to fill evidentiary gaps when she commented that "[s]uch minimal [degenerative and artherosclerotic vascular] changes [shown in the October 2011 imaging study of Hill's lumbar spine] would not

-16-

be expected to cause significant pain without any nerve root impingement or spinal stenosis." (Tr. 13.)

The ALJ made this statement in connection with assessing the credibility of Hill's claim of severe low back pain. In doing so, the ALJ also considered the following evidence in the record: Hill had not had any epidural injections, physical therapy, or other treatment for low back pain; Hill had not sought an evaluation by a specialist for low back pain (unlike her left shoulder pain); Hill's orthopedist, Dr. Liechty, did not consider any low back pain to be causing much pain or functional limitation; Dr. Liechty only prescribed narcotic pain medication before and during the period in which Hill was recovering from her left hip replacement surgery; by August 8, 2011, Hill told Dr. Liechty that she was only using one or two Vicodin tablets per week and was not complaining of any low back pain to him; there was no reason to expect that Hill would not continue to improve with time after her hip surgery; Dr. Smith's treatment notes from 2011 and 2012 describe Hill's gait as being without abnormalities, and while they mention Hill's left shoulder pain in November 2011, they do not include any complaints of neck or low back pain. (Tr. 13.) The ALJ found that, "[i]n light of the lack of complaints to treating physicians," Hill's testimony about her low back pain, and her functional limits from such pain, was not credible. (Tr. 13); *see Sienkiewicz v. Barnhart,*

119 Fed. Appx. 811, 817 (7th Cir. Jan. 6, 2005) (repeated failure to seek medical treatment provided support for the ALJ's credibility finding). Consequently, the ALJ found that the evidence failed to establish that Hill's low back pain constituted a severe impairment. (Tr. 13.)

The Court finds that the record supports the ALJ's finding that Hill's low back pain did not constitute a severe impairment, regardless of the ALJ's statement about the pain expected from the minimal degenerative changes shown in the imaging study of Hill's lumbar spine. *See Denton v. Astrue*, No. 08-2134, 2009 WL 2566955, at *7 (C.D. Ill. Aug. 14, 2009) (noting the ALJ's alleged "playing doctor" comments were not necessary to the decision, and were not inconsistent with the evidence in the record). Even if the ALJ erred in making this statement, the error is harmless because the record supports the ALJ's finding. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (an error is harmless "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record."); *Shramek v. Apfel*, 226 F.3d 809, 813-15 (7th Cir. 2000) (upholding the ALJ's disability determination even though the factors used to reject the claimant's credibility were not supported by the record, because the ALJ's error did not impact the outcome).

Accordingly, the Court cannot conclude the ALJ erred by failing to include symptoms of Hill's low back pain in the RFC.

Hill next argues that the ALJ's RFC finding failed to include greater functional limitations on Hill's sitting, standing, and walking based on range of motion deficits in Hill's cervical spine and lumbar spine. (*See* DE# 16 at 17 & n.60 (citing Tr. 278 (consultative exam report)).) The SSA has explained that "[i]n assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p. While the RFC assessment must be based on *all* of the relevant evidence in the case record," the ALJ must consider "only limitations and restrictions attributable to *medically determinable impairments*" in making the RFC determination. *Id*. (emphases in original). The ALJ must "build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quotation omitted).

Here, the ALJ found that the minimal functional limitations from Hill's neck and low back pain "do not further reduce her capacity *beyond the limitations imposed by her left hip and left shoulder impairments*." (Tr. 13 (emphasis added).) The ALJ noted that while "[Hill] has medically determinable disc disease," the

evidence "does not support a finding that it causes more than minimal functional limits." (Tr. 13.)

The ALJ supported this determination with evidence from the record. As discussed in detail above, the ALJ addressed evidence relating to Hill's low back. The ALJ also considered the following evidence relating to Hill's neck: Hill had cervical fusion in 1985, and worked at medium to heavy jobs for many years thereafter; Hill had not sought treatment for neck pain since the alleged onset date in June 2011, "suggest[ing] that neck pain is not that limiting and may only be related to her left shoulder problems"; and, while Hill sought treatment for a neck strain in November 2010, when she returned in December 2010, she was not complaining of neck pain and had a full range of motion in her neck, "suggest[ing] that the neck pain resolved before her alleged onset date." (Tr. 13.)

The ALJ adopted the limitations proposed by Hill's orthopedist and the state agency physicians. More specifically, Dr. Liechty released Hill to work with limitations on lifting, pushing, and pulling. (Tr. 317, 319.) The ALJ gave Dr. Liechty's opinion "great weight," and accommodated these limitations. (Tr. 15, 18.) State agency physicians opined that Hill could sit up to six hours in an eight-hour workday with normal breaks, and stand and/or walk up to six hours in an eight-hour workday with normal breaks. (Tr. 282.) In opining on

Hill's limitations, the state agency physicians took into account the range of motion deficits in Hill's spine and both shoulders. (Tr. 282 (noting "rom [range of motion] loss to her lumbar spine as well as bilaterally shoulders").)  The ALJ gave the state agency physicians' opinion "great weight," and accommodated their recommended limitations.  (Tr. 15, 18.)  Thus, while the ALJ did not specifically address the range of motion deficits of Hill's spine and right shoulder, the limitations adopted by the ALJ accommodated those deficits.[2]  Therefore, the Court finds substantial evidence supports the ALJ's decision not to include additional limitations to Hill's sitting, standing, or walking. *See Pepper*, 712 F.3d at 362 (adequate discussion of the issues does not need to contain a complete written evaluation of every piece of evidence).

Finally, Hill argues that the ALJ failed to account for her right shoulder problems in considering the combination of her impairments.  Hill points to range of motion deficits in her right shoulder that were identified in her consultative exam. (DE# 16 at 17.)  However, "the diagnosis of an impairment does not alone establish its severity or its resulting limitations." *Stanley v. Astrue*, No. 1:11-CV-00248, 2012 WL 1158630, at *11 n.8 (N.D. Ind. Apr. 6, 2012) (citing *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) and *Estok v. Apfel*, 152 F.3d 636, 640

---

[2] The Court notes that no doctor opined that Hill's impairments prevented her from completing "light work" with the limitations adopted by the ALJ.

(7th Cir. 1998)).  At the hearing, Hill did not complain about her right shoulder.  Rather, she testified that she is right-handed, is able to use her upper right extremity, and does some housecleaning, including vacuuming, which, as the ALJ noted, "necessarily includes the use of at least one upper extremity." (Tr. 17.)  Because Hill is right-handed, the ALJ found that she still has unlimited use of her dominant upper extremity.  (Tr. 18.)  In determining that Hill did not have a sufficient combination of impairments, the ALJ specifically noted Hill's use of "at least one upper extremity for gross and fine motor movements."  (Tr. 15.)  Given the evidence in the record, the Court finds that the ALJ did not err in not including Hill's right shoulder issues in the RFC determination.


Credibility Determination

Hill claims that the ALJ failed to evaluate the credibility of Hill's testimony properly.  Because the ALJ is best positioned to judge a claimant's truthfulness, this Court will overturn an ALJ's credibility determination only if it is patently wrong. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).  However, when a claimant produces medical evidence of an underlying impairment, the ALJ may not ignore subjective complaints solely because they are unsupported by objective evidence.  *See Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005).  Instead, the

ALJ must make a credibility determination supported by record evidence and be sufficiently specific to make clear to the claimant and to any subsequent reviewers the weight given to the claimant's statements and the reasons for that weight. *See Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003).

In evaluating the credibility of statements supporting a Social Security Application, the Seventh Circuit has noted that an ALJ must comply with the requirements of Social Security Ruling 96-7p. *See Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). This ruling requires ALJs to articulate "specific reasons" behind credibility evaluations; the ALJ cannot merely state that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." SSR 96-7p. Furthermore, the ALJ must consider specific factors when assessing the credibility of an individual's statement including:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effect of any medications the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.  Any measures other than treatment the individual uses or has used to relieve pain or other symptoms . . . ; and

7.  Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; *see also Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003). An ALJ is entitled to consider the objective medical evidence, or lack thereof, as a factor in assessing credibility, and "may properly discount portions of a claimant's testimony based on discrepancies between [the c]laimant's allegations and objective medical evidence." *Crawford v. Astrue*, 633 F. Supp. 2d 618, 633 (N.D. Ill. 2009); *see Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Smith v. Apfel*, 231 F.3d 433, 439 (7th Cir. 2000) ("[A]n ALJ may consider the lack of medical evidence as probative of the claimant's credibility."); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Hill argues that the ALJ rendered an improper credibility determination by using "a variation of boilerplate language disapproved of in *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011)." (DE# 16 at 18.) The ALJ used some boilerplate or template language in initially assessing Hill's credibility, stating:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(Tr. 16.) Almost identical boilerplate language was used and criticized in *Bjornson v. Astrue,* 671 F.3d 640, 644-45 (7th Cir. 2012). There, the Seventh Circuit noted:

> One problem with the boilerplate is that the assessment of the claimant's "residual functional capacity" (the bureaucratic term for ability to work) comes later in the administrative law judge's opinion, not "above"—above is just the foreshadowed conclusion of that later assessment. A deeper problem is that the assessment of a claimant's ability to work will often . . . depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards.

*Id*. at 645. Yet, as noted in *Adams v. Astrue*,

> While this sort of boilerplate is inadequate, *by itself,* to support a credibility finding, its use does not make a credibility determination invalid. Not supporting a credibility determination with explanation and evidence from the record does.

880 F. Supp. 2d 895, 906 (N.D. Ill. 2012) (emphasis in original; citations omitted). In *Adams*, the ALJ's decision did not use the boilerplate language in a mechanical fashion, and the ALJ offered further explanation to support his conclusion that the plaintiff's claimed limitations were not supported by the record

as a whole.  *See id.*  Accordingly, the court determined that reversal was not warranted.  *See id.*

In this case, the ALJ found that some of Hill's allegations were not entirely credible because they are out of proportion to the objective medical evidence.  (Tr. 16.)  The ALJ's decision "consider[ed] all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "opinion evidence."  (Tr. 15 (citing 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929 and SSRs 96-2p, 96-4p, 96-5p, 96-6p, 96-7p, and 06-3p.)

More specifically, the ALJ first set forth Hill's hearing testimony regarding her daily activities, symptoms, and medications.  (*See* Tr. 16.)  She then addressed Hill's treatment history, finding that Hill had severe degenerative disease in her left hip that caused pain, and had a total hip replacement. (Tr. 16.)  A month after this surgery, the consultative physical exam demonstrated significant stiffness and restricted motion in the left hip area, and that Hill walked with a limp.  (Tr. 16-17, 276-77.)  The ALJ also noted that by August 2011, Hill was only using one or two Vicodin per week for pain and no longer needed to use a walker.  (Tr. 17.)  The ALJ remarked that Hill's testimony about severe pain in her femur when walking seemed less than credible due to the lack of evidence of any complaint about

it to her orthopedist, Dr. Liechty. (Tr. 17.) The ALJ also considered evidence of a significant medical improvement in Hill's left hip, whereby Dr. Liechty released Hill to work that did not require heavy lifting, squatting, pushing, or pulling indefinitely. (Tr. 17, 280, 316.) The ALJ also considered the subsequent treatment notes of Dr. Smith, Hill's primary care physician, which do not contain any complaints of hip, femur, or back pain, but did state that Hill's gait was not abnormal. (Tr. 17, 332-338.) While the ALJ found that no medical evidence supported Hill's allegations that her back and neck pain increased since the alleged onset date, she did find that medical evidence supported Hill's continued left shoulder pain. (Tr. 17.) The ALJ also noted that pharmacy records indicate that Hill's last refill of Vicodin was in 2011, and she was only taking Sertraline (Zoloft) and Naproxen in 2012, suggesting that Hill's hip pain and back pain were not as severe as she claimed for at least 12 months. (Tr. 17.)

Regarding Hill's claims of severe low back pain, the ALJ considered the minimal degenerative changes in Hill's lumbar spine on the imaging study in October 2011, as well as the lack of complaints of low back pain in Hill's medical records. (Tr. 13, 17, 303.) The ALJ noted that Hill had never had any epidural injections, physical therapy, or other treatment for low back pain, had never been evaluated by a specialist for low back pain,

-27-

and never asked to be referred to a specialist for low back pain. (Tr. 13, 17.) Regarding Hill's alleged neck pain, the ALJ noted that Hill had neck surgery in 1985, but recovered and worked at a heavy job for many years. (Tr. 17.) The ALJ also noted that while Hill sought treatment for a neck strain in November 2010, she did not complain of neck pain when she returned to the hospital for left shoulder pain in December 2010, or to any other physician since the alleged onset date. (Tr. 17, 206-20.) The dearth of complaints and medical treatment for neck and low back pain supports the ALJ's determination that Hill's claims of severe neck and low back pain were not credible. *See Sienkiewicz,* 119 Fed. Appx. at 817 (repeated failure to seek medical treatment provided support for the ALJ's credibility finding). The discrepancy between the degree of pain attested to by Hill and that suggested by the medical evidence is probative that Hill may be exaggerating her condition. For the ALJ "to rely on this as evidence of a lack of complete candor cannot be deemed patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435-36 (7th Cir. 2000).

The ALJ found that Hill's claims of left shoulder pain were credible, given the evidence of osteoarthritis tendinopathy in her shoulder, and decreased range of motion of the left shoulder upon physical examinations. (Tr. 17, 229, 277.) The ALJ acknowledged Hill's inability to afford the recommended shoulder

replacement surgery. (Tr. 17, 229.) The ALJ considered Hill's inability to lift, carry, and reach with the left upper extremity, and included some limitations in her RFC accordingly. (Tr. 15, 17.)

In determining that Hill did not require additional limitations, the ALJ relied upon Hill's testimony that she does some housecleaning, including vacuuming (which necessarily include the use of an upper extremity), cooks, does laundry with some limits on lifting, and babysits two small children part-time. (Tr. 17-18); *see Schmidt,* 395 F.3d at 747 (considering claimant's performance of daily activities as a factor when discounting claimant's credibility). The ALJ noted Hill's testimony that she can use her right upper extremity (Tr. 17), and the fact that Hill is right-handed and has not shown any limits on handling and fingering with either hand. (Tr. 18.) The ALJ also found that Hill's use of only aspirin and Naproxen for pain suggests that the pain is not as limiting as she testified. (Tr. 18.) The ALJ considered the opinions of Dr. Liechty and the state agency physicians. Affording their opinions "great weight," the ALJ incorporated their suggested restrictions into the RFC determination. (Tr. 18.)

In sum, the ALJ adequately built an accurate and logical bridge between the evidence or records and her conclusion that Hill's testimony was not entirely credible. The ALJ gave reasons

for discrediting Hill's complaints in the hearing and cited to medical evidence and other evidence of daily activities in the record to support her decision. Although the ALJ may have used some "template" language, the substance of the decision itself supports her credibility determination. *See Smith v. Astrue,* No. 2:11-CV-32, 2012 WL 1435661, at *6 (N.D.W. Va. Apr. 24, 2012) (noting that the ALJ's findings were not "boilerplate language" where the ALJ spent nearly three pages discussing evidence supporting his credibility finding). Here, the ALJ sufficiently analyzed and explained her credibility finding. The credibility determination was supported by evidence in the record and this Court cannot say that the credibility determination was "patently wrong." *See Skarbek*, 390 F.3d at 504; *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (even where some of the ALJ's findings concerning the claimant's credibility were a bit harsh, "an ALJ's credibility assessment will stand as long as there is some support in the record. . ." (quotation and brackets omitted)). Therefore, the ALJ's credibility determination, which is entitled to special deference, will be affirmed.


Hill's Work History

Finally, Hill argues that the ALJ failed to consider her consistent and arduous work history in determining her credibility. (DE# 16 at 19-20.) She asserts that a claimant

with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability. *See Springer v. Colvin*, No. 1:13-CV-185, 2014 WL 3075342, at *8 (N.D. Ind. July 2, 2014) (citations omitted).

In *Springer*, the plaintiff argued that the ALJ made several errors in deciding that he was not disabled. The court agreed, finding that the ALJ failed to: (1) build an accurate and logical bridge between the evidence and her RFC conclusion; (2) fully consider evidence of plaintiff's medical problems; and (3) take into account the combination effect of plaintiff's medical problems. *See id*. at *6. The court therefore remanded for further proceedings. *See id.* The court also agreed with the plaintiff's argument that the ALJ's credibility determination was improper, finding that the ALJ had taken a few stray statements and facts in the record out of context and used them to discredit key medical findings. *See id*. at *7-*8. Finally, the plaintiff asserted that the ALJ had relied upon "the faulty premise that if impairments and/or pain were present for years and years and it did not keep Plaintiff from working then, it would not keep him from working now." *Id.* at *7. Because the case was "being remanded anyway," the court further remanded for a more accurate credibility determination, noting that "[a] long and continuous past work record with no evidence of malingering is a factor supporting credibility assertions of disabling impairments." *Id*.

at *8 (citing *Allen v. Califano*, 613 F.2d 139, 147 (6th Cir. 1980)).

Here, the ALJ considered Hill's work history, and found that Hill had worked as a press operator and at "medium to heavy jobs for many years." (Tr. 13, 18.)  As explained in detail above, the ALJ considered the evidence and found Hill's complaints of left shoulder pain to be credible, but found her complaints of severe neck and low back pain to be less than credible.  The ALJ determined that Hill's impairments rendered her unable to continue to do heavy work as a press operator, and that she is able to do light work with some limitations.  (Tr. 17-19.)  The Court finds that the ALJ considered Hill's work history, as well as other factors, in assessing Hill's credibility.  For the reasons set forth above, the Court holds that the ALJ's credibility determination is supported by the record, and not patently wrong.


CONCLUSION

For the reasons set forth above, the Commissioner of Social Security's final decision is **AFFIRMED**.


**DATED: December 10, 2014**          **/s/ RUDY LOZANO, Judge**
                                      **United States District Court**